SHIMP BROTHERS, a Partnership, Appellant, v. A. M. PLACE, Receiver, et al., Appellees.

No. 44143.

SEPTEMBER 27, 1938.

REHEARING DENIED MARCH 10, 1939.

Kepford and Kepford, for appellant.

W. L. Beecher, for appellees A. M. Place, Receiver, and Farmers & Merchants Savings Bank.

Ray R. Reed, for appellee George S. Mornin, Receiver.

E. H. McCoy, for appellees Floyd P. Davis, and United States Fidelity & Guaranty Company.

DONEGAN, J.—The record in this case is somewhat complicated and we deem it advisable to set out the principal facts involved as nearly as possible in chronological order.

George McNellis was the owner of two farms in Black Hawk county. One of these farms was encumbered by a mortgage held by the Connecticut General Life Insurance Company. McNellis was also indebted to First National Bank of Dunkerton and First National Bank of Waterloo in considerable amounts, evidenced by unsecured promissory notes. Shimp Bros., a co-partnership, of Dunkerton, Iowa, performed labor and furnished material for the improvement of the farm on which the mortgage was held by Connecticut General Life Insurance Company, and, some time prior to April 1, 1928, filed a mechanic's lien for $565 against the land upon which the improvements had been made. Some time after the filing of this mechanic's lien McNellis endeavored to renew the mortgage against this farm, but the insurance company was unwilling to renew such mortgage unless the mechanic's lien was released. McNellis talked to W. R. Jameson, a representative of the insurance company, and Jameson and McNellis talked to Floyd P. Davis, who was vice president of the First National Bank of Dunkerton, in regard to obtaining a release of this mechanic's lien. Thereafter McNellis and Davis had a talk with Harvey Shimp, one of the copartners, and were told that Shimp Bros. would have to have something that was just as good as the mechanic's lien before they would release it. No agreement was reached at that time, but, on the following day, either George McNellis or Davis saw Harvey Shimp and told him to go to the bank. Shimp went to the bank where a note for $565, and a chattel mortgage securing same, had been executed by Vern McNellis, a son of George McNellis. This chattel mortgage covered four horses and a corn sheller. Both the note and the mortgage were made payable to the First National Bank of Dunkerton, were left in the possession of the bank, and the chattel mortgage was duly filed in the office of the recorder of Black Hawk county,

Iowa, on April 3, 1928. At the time the note and chattel mortgage were given to the bank, Davis prepared the following memorandum, which was given to Shimp Bros.:

"Not subject to check. Deposited in the First National Bank of Dunkerton to the credit of Shimp Brothers in Special acct. Dunkerton, Iowa, April 3rd 1928. This credit represents amt. of note secured by chattel mortgage given bank above date by Vern W. McNellis. As fast as Vern McNellis pays on this note secured by chattels said sums are to be set over to Shimp Bros. in their regular checking account and the amount of this deposit is not subject to check and is not available only as made because of the deposits of Vern McNellis as set out above. $565.00 F. P. D."

Following this transaction Shimp Bros. released their mechanic's lien.

Some time after the execution of the note, chattel mortgage and memorandum, George McNellis and Mae McNellis, his wife, and Vern McNellis, his son, executed a chattel mortgage to the First National Bank of Waterloo, and also a chattel mortgage to Davis and W. A. Lane, as trustees for the First National Bank of Dunkerton, covering personal property owned by the mortgagors. These chattel mortgages were given to secure indebtedness owed by the McNellises to the First National Bank of Waterloo and to the First National Bank of Dunkerton. The indebtedness secured by these two chattel mortgages was not paid, foreclosure proceedings were instituted, decrees of foreclosure entered, and F. P. Davis was appointed receiver to take possession of, handle and sell all the property covered by both mortgages, and distribute the proceeds under order of court. As such receiver, Davis inventoried, took charge of, appraised, made application for authority to sell, sold the personal property at public sale, made report of his doings, distributed the proceeds of the sale, and made final report and was discharged. The property described in the two chattel mortgages above referred to was sold by Davis, as receiver, at public sale held on the McNellis farm on January 10, 1931, and it is claimed by Shimp Bros. that, at this public sale, Davis also sold the horses described in the chattel mortgage executed by Vern McNellis to the First National Bank of Dunkerton in April 1928, in connection with the release of Shimp Bros.' mechanic's lien on the

McNellis farm. It is also claimed by Shimp Bros. that the corn sheller described in this chattel mortgage executed by Vern McNellis to the bank was purchased by George McNellis, prior to the public sale and that he paid the purchase price of $80 to Davis at the bank. Neither the $80, which George McNellis is claimed to have paid for the corn sheller, nor the sums which Shimp Bros. claim were received by Davis for the horses covered by the Vern McNellis chattel mortgage and sold at the public sale on January 10, 1931, nor any part thereof, was ever credited on the note secured by such chattel mortgage or placed to the credit of Shimp Bros. pursuant to the memorandum given to them by the bank. In addition to Davis, for whose alleged wrongful acts Shimp Bros. seek damages, claim is made against United States Fidelity & Guaranty Company, surety on Davis' bond as receiver, and against the other defendants, because they are alleged to have received funds distributed by Davis, as receiver, which were the proceeds of the sale of the horses described in the Vern McNellis chattel mortgage to the bank.

Originally the plaintiff filed a petition at law in three counts. Later, the entire proceedings were transferred to equity and the plaintiff filed an amended and substituted petition in equity, in three counts: A count at law for damages, a count at law for conversion, and a count in equity to establish and enforce a trust.. Upon the trial of the case the district court found for the defendants, dismissed the plaintiff's petition, and entered judgment against the plaintiff for costs. From the judgment and adverse rulings of the trial court, the plaintiff appealed.

I. Plaintiff's brief and argument contains three divisions, each division corresponding to a count of the petition. The first division is devoted to the proposition that the court erred in failing to find for the plaintiff on the count of the petition which claimed damages at law for wrongful and fraudulent representations of the defendants. The wrongful and fraudulent representations, for which damages are claimed, are alleged to have been made by F. P. Davis. As stated in the brief and argument, appellant's contention is:

"That F. P. Davis personally, and as an officer of the defendant, First National Bank of Dunkerton, made false representations to the plaintiffs, these being that he represented

to them that the chattel mortgage which he had secured for their benefit would ·fully protect them, when in fact, as his future conduct clearly confirmed, he intended that they have no protection at all, but falsely and fraudulently ·induced them to release their lien in order that he and his bank might gain a distinct advantage thereby.''

■ Appellant's theory seems to be that, at the time the note and mortgage were executed by Vern McNellis, they were made to the First National Bank of Dunkerton instead of to Shimp Bros., because F. P. Davis secretly intended thus to secure the bank for some of the money then owed to it by George McNellis. The mere suspicion or possibility of such an intention, however, is not sufficient to entitle the plaintiff to damages, and, before plaintiff could recover on this count of the petition, the burden was upon it to establish by a preponderance of the evidence the following essential propositions: 1. That some statement of fact was made by Davis; 2. that such statement was false; 3. that such statement was known to Davis to be false; 4. that such statement was made for the purpose of deceiving Shimp Bros.; 5. that Shimp Bros. were deceived by said statement and relied thereon; 6. that, because of the falsity of such statement and their reliance thereon, Shimp Bros. sustained damages. In our view of the evidence the plaintiff not only failed to establish all of these propositions, but failed to establish any one of them.

The only occasions on which Davis could have made any false representations to Shimp were when Jameson and George McNellis talked to Shimp at the Shimp place of business in regard to the release of the mechanic's lien, on the day preceding the execution of the note and .chattel mortgage, and on the day the note, chattel mortgage and memorandum were executed at the bank. The evidence shows no statement by Davis nor any mention of a note and chattel mortgage being executed by Vern McNellis to take the place of the mechanic's lien, on the first of these occasions. The evidence further indicates that on the second occasion, which appears to have been on the following day, the note and chattel mortgage had already been executed by Vern McNellis before Shimp arrived at the bank, and that the only persons present on that occasion, and having any part in the transaction, were Harvey Shimp,

George McNellis and F. P. Davis. Although Shimp now claims that he did not know at that time, and did not learn until long thereafter, that the note and chattel mortgage were made to the bank, instead of to Shimp Bros., George McNellis, who was a witness for the plaintiff, testified that, after Shimp arrived at the bank, he and Shimp went into the back room where he thought Davis handed the chattel mortgage to both of them; that he (McNellis) read it; that everything seemed to be clear and above board; and that there was no reason why Harvey Shimp could not have read it if he wanted to. Both McNellis and Davis gave it as their recollection that Shimp did read the mortgage, and Shimp himself admits that he read part of it. Davis testified that both the note and mortgage were made to the bank, because McNellis wanted it that way; and that when he made out the note and chattel mortgage he had no knowledge whatever of the property to be put in the mortgage, and the description of the property was given to him by McNellis. So far as we can find, there is no denial of either of these statements by McNellis. Not only does the record fail to show any statement or representation to have been made by Davis, on the occasion of this conversation at the bank, which could be construed to be an inducement to Shimp Bros. to release the mechanic's lien and accept the note and chattel mortgage in place thereof, but, on the contrary, we think it amply supports the conclusion that, in drafting the note and chattel mortgage and delivering the memorandum to Shimp, Davis was not actuated by any wrongful intention, but was acting as many bankers have acted in similar circumstances, and was trying to assist in working out an arrangement by which Shimp Bros. would be given security for the mechanic's lien which they were about to release, so that George McNellis could renew the mortgage on his farm. If there be any cause for criticism of Davis for the part which he took in the transaction, we think it should be only that he attempted to do something that the parties should have had done by a competent lawyer; and, as frequently happens, when parties attempt to save the small fee that a lawyer would charge for such a service, the saving thus accomplished appears to have resulted in fruitful litigation.

▉ II. Division II of appellant's brief and argument is devoted to the contention that the trial court erred in dis-

missing the second count of the petition, which sought to recover damages at law for wrongful conversion of property upon which plaintiff had a prior lien. It is appellant's contention that the horses described in the chattel mortgage executed by Vern McNellis to the First National Bank of Dunkerton, Iowa, in April 1928, in connection with the release by Shimp Bros. of their mechanic's lien, were sold by Davis, at the public sale on January 10, 1931, in connection with the foreclosure of the chattel mortgage given to Davis and W. A. Lane, as trustees for the First National Bank of Dunkerton. Davis is also claimed to be liable for the conversion of $80 received by him from the sale of the corn sheller described in the Vern McNellis chattel mortgage, which plaintiff alleges was sold to George McNellis prior to the public sale.

The only evidence relied on to show the sale of the horses and corn sheller described in the Vern McNellis mortgage is that of George McNellis. George McNellis knew the four horses described as the property of his son, Vern McNellis, in the chattel mortgage given to the Dunkerton bank by the son in April 1928. The property sold by Davis as receiver was property covered by the mortgage executed by George McNellis, Mae McNellis, his wife, and Vern McNellis, his son, on January 15, 1929. Davis had never seen the four horses described in the Vern McNellis mortgage, and there is no denial of his testimony that he did not know and that no one told him that these horses were included in the mortgage given to him and Lane, as trustees for the First National Bank of Dunkerton. This mortgage does not describe any four horses in terms which would identify them as the four horses described in the Vern McNellis mortgage. The McNellises must have known the different items of property to which the description in the mortgage given by them to Davis and Lane, as trustees, applied, and this mortgage contained a covenant by the mortgagors that the chattels described therein were "free from any encumbrance whatever."

After the decree foreclosing the mortgage to Davis and Lane, as trustees, had been entered, and Davis had been appointed receiver, he went to what is called the north farm, where the mortgaged property was located, George McNellis pointed out to him the items of property covered by this mortgage, and Davis made an inventory thereof which he filed in

court. At the public sale of the property covered by this mortgage Davis acted as clerk and made a list showing each item of property sold and the amount received therefor, and, following the sale he made a report to the court which contained a copy of this list. Both George McNellis and Vern McNellis were present at this sale and saw the property sold. George McNellis does not claim, and there is no evidence to show that either he or Vern McNellis ever told or even suggested to Davis, that the horses described in the Vern McNellis mortgage were included in the mortgage given to Davis and Lane, as trustees, or were being sold by Davis, as receiver, at the public sale; and, notwithstanding the fact that in the mortgage given to Davis and Lane the mortgagors covenanted that the property therein described was free from encumbrance, the only explanation given by George McNellis of his failure to tell Davis that this mortgage included the horses described in the Vern McNellis mortgage was, that he supposed Davis knew it and would apply the proceeds of the sale of these horses on the Vern McNellis mortgage. Davis, on the other hand, testifies positively that on several occasions he asked George McNellis whether the mortgage given to him and Lane, as trustees, contained any of the property described in the Vern McNellis mortgage, and that George McNellis told him it did not.

George McNellis testified as a witness for plaintiff at the trial, which began February 1, 1937, more than six years after the public sale, and stated that at such sale held on January 10, 1931, five horses covered by the chattel mortgage given by Vern McNellis were sold, and gave the price which he claimed each of them was sold for. Only four horses are described in the Vern McNellis mortgage, the description therein being—— ''one span gray mares, one gray three year old mare colt, one gray mare and increase.'' Neither the descriptions contained in this mortgage nor the prices George McNellis testified were paid for these horses at the public sale corresponded to the descriptions and prices shown in the report of the sale; and, when he attempted to point out, in the itemized list of property sold at the public sale, the horses which he claimed were covered by the Vern McNellis mortgage, still further inconsistencies appear. We think the inconsistencies appearing throughout his testimony make it of little, if any, weight, and that whatever

weight might otherwise be given to it is destroyed by the following admissions on cross-examination:

"Q. All right, you have examined Exhibit 'B' and you cannot find thereon any one of the horses included in this so-called mortgage (the $565.00 mortgage on the Vern McNellis property) that was sold at that sale for the price set out on that bill? A. No sir, I cannot. * * *

"Q. So you would say that the description in the mortgage given for $565.00, to secure the $565.00, was incorrect? A. I would say some of it was, that the horses wasn't of the kind and color as the mortgage read."

We are satisfied that all property sold at the public sale was property which was described in the chattel mortgage given by George McNellis, Mae McNellis and Vern McNellis to Davis and Lane, as trustees for the First National Bank of Dunkerton, and that plaintiff has failed to sustain the burden of showing by a preponderance of the evidence that any of the horses sold at this sale was subject to the lien of the Vern McNellis mortgage. As to the $80 George McNellis claims he paid to Davis for the corn sheller described in the Vern McNellis mortgage, Davis positively and unqualifiedly denies that any such payment was made; and, as the burden was on the plaintiff to establish such payment, and the determination of this fact involves the credibility of the witnesses, we think it sufficient to say that we find that the plaintiff has failed to sustain the burden under which it labored. In view of the decision which we here reach, it is unnecessary to consider other questions raised in this division of appellant's brief and argument.

■ III. In Division III of its brief and argument appellant alleges error on the part of the trial court in dismissing Count 3 of its petition. As stated in the brief and argument:

"Ground three of plaintiff's amended and substituted petition alleges the existence of a trust arrangement between these appellants and the appellee, and asks that this said trust arrangement be enforced and that a trust be impressed upon certain funds allegedly in the hands of the defendants and appellees, First National Bank of Waterloo."

This contention of the appellant is based upon the fact that the note and mortgage given by Vern McNellis to the First

National Bank of Dunkerton was given as security for the debt owed by George McNellis to Shimp Bros., and it was understood that as payments were made to the bank upon the note such payments would be placed to the credit of Shimp Bros. in a special account. It may be conceded that such arrangement would constitute a trust, of which the bank would be trustee and Shimp Bros. the beneficiary. But, as we have already found, in the preceding division of this opinion, that the plaintiff failed to prove that any part of the property covered by the Vern McNellis mortgage was sold by Davis, at the public sale in connection with the foreclosure of the other mortgage, wherein he was acting as receiver, or that any money was ever paid to him for any of the property covered by the Vern McNellis mortgage, neither Davis nor the other defendants can be held to account for trust property which never came into their hands.

For the reasons stated, we find no error in the findings and judgment of the trial court, and they are, therefore, affirmed.— Affirmed.

SAGER, C. J., and KINTZINGER, STIGER, MILLER, ANDERSON, and RICHARDS, JJ., concur.